IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03297

MICHAEL LEAGO and IHE PRODUCTIONS LLC,

Plaintiffs,

v.

JEREMY RICKS,

Defendant.

---

## VERIFIED COMPLAINT

---

Plaintiffs Michael Leago ("Leago") and IHE Productions LLC ("IHE") (collectively, "Plaintiffs") by and through their undersigned counsel, allege as and for their Verified Complaint against Defendant Jeremy Ricks ("Ricks"):

### I.     STATEMENT OF THE CASE

1.     This action stems from Ricks' wrongful breaches of his partnership agreement with Leago, refusal to pay for goods sold by IHE and received by Ricks (and his affiliated entities) without objection, and tortious interference with Leago's business relations.

2.     Leago is a well-known farmer and producer of specialty hemp seeds across the United States.  IHE is one of the hemp industry leaders, was the first licensed bonded hemp broker in the United States, has been helping farmers buy and source genetics since 2016, and distributes and sells specialty hemp seeds and starts both domestically and internationally by connecting wholesalers to retailers to consumers.

3.     In or about April 2019, Ricks formed a partnership with Leago to grow, sell, and distribute specialized hemp seed starts through IHE.  In furtherance of their partnership, IHE sold

and distributed over $4.5 Million starts (*i.e.*, hemp seeds that have been grown into small plants by growers) to Ricks and his affiliated farms or joint ventures.  However, Ricks has failed and/or refused to pay IHE for any of these starts.  Accordingly, Leago and IHE were constrained to commence this action.

## II.    PARTIES, JURSIDICTION AND VENUE

4.    Plaintiff Leago is an individual residing in the State of Colorado.

5.    Plaintiff IHE is an Oregon limited liability company, with its principal place of business in the State of Colorado.  Leago, who resides in the State of Colorado, is the sole member and owner of IHE.

6.    Upon information and belief, Defendant Ricks resides at 1281-1283 Greenwich Street, San Francisco, California  94109.

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) since the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.  Ricks is subject to the jurisdiction of this Court since, among other things: Ricks transacts business in the State of Colorado, commits tortious acts by causing injury to Leago in the State of Colorado, and tortiously interferes with Leago's business relations in the State of Colorado.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and/or (c)(1), for the reasons set forth more fully above.

## III.    FACTUAL BACKGROUND

A.    <u>The Partnership Agreement</u>

9.    In or about April 2019, Ricks and Leago formed a partnership whereby they agreed:

75282345.7

(i)     to each contribute specialized hemp seeds to Altman Nursey ("Altman") to be grown into starts at Altman (Ricks purchased his seeds from a third-party producer, and Leago produced his own seeds);

(ii)    that the seeds each party contributed would be accounted for internally as an expense of $1.00 per seed;

(iii)   that Leago's company IHE would use its connections, expertise, and experience to sell and distribute the starts to various individuals, entities, and farms in accordance with invoices that IHE sent to and were received by such individuals, entities, and farms;

(iv)    both IHE and Front Range Harvest, LLC ("FRH"), a company owned in whole or in part by Ricks, receive a management fee to oversee and manage Altman's growth of the starts (FRH received a 20% management fee, and IHE received a 10% management fee); and

(v)     IHE and/or third-party sellers receive a 3% sales commission on each paid invoice; and

(vi)    after IHE received payments of all invoiced amounts, Ricks and Leago would be entitled to a percentage of the total revenue received (minus all associated expenses) proportionate to the number of starts distributed and sold from the seeds that each party contributed (*e.g.*, if Leago sold 2.8 million starts and Ricks sold 1.2 million starts, Leago would receive 70% of the revenues after deducting expenses, and Ricks would receive 30% of the revenues after deducting expenses)

(the "Partnership Agreement").

10.     Leago's and Rick's Partnership Agreement repeatedly and continually was

75282345.7

confirmed by e-mail correspondence between and/or among Leago and Ricks, by their course of conduct and/or dealing, and by IHE invoices received without objection by Ricks, Ricks' entities, and/or farms affiliated with Ricks.

11.     During the summer of 2019, Leago paid Altman approximately $1,299,440 for 2,930,253 starts that were grown at Altman.  Upon information and belief, Ricks paid Altman an unknown amount for 1,191,898 starts that were grown at Altman.  IHE (along with FRH) oversaw and managed Altman's growth of these starts.  IHE then used its connections, expertise, and experience to sell and distribute these starts to: (i) individuals, entities, and farms across the United States; and (ii) Ricks, Ricks' company FRH, and Ricks' affiliated farms or joint ventures.

12.     Accordingly, after receiving all payments due from individuals, entities, and their affiliated farms for the starts sold by IHE, and after deducting expenses, based on the proportionate number of starts that were distributed and sold by IHE, Leago should receive 71.1% of the revenues and Ricks 28.9% of the revenues (*i.e.*, 2,930,253 Leago starts + 1,191,898 Ricks starts = 4,122,151 total starts ÷ 2,930,253 Leago starts = 71.1%).

### IV.     GENERAL ALLEGATIONS

**A.**     **<u>Ricks Breaches the Partnership Agreement</u>**

13.     Plaintiffs incorporate all prior paragraphs by reference.

14.     Although IHE has paid its 20% management fee to FRH, Ricks breached the Partnership Agreement by failing and/or refusing to pay the agreed-upon 10% management fee owed to IHE for its oversight and management of Altman's growth of the starts.  The management fee Ricks owes to IHE amounts to approximately $406,621.45.

15.     Ricks also breached the Partnership Agreement by failing and/or refusing to pay IHE over $4.5 Million for starts IHE sold and distributed to Ricks, Ricks' company (FRH), and

Ricks' affiliated farms or joint ventures.  Indeed, payments have been due and owing by Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures for starts sold and distributed to them by IHE – and a significant portion of the $4,599,859.30 outstanding balance owed has been due for over a year.

16.     From June 26, 2019 through August 22, 2019, starts sold by IHE were shipped to and received by Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures. IHE invoices for these starts, dated June 25, 2019 – August 26, 2019, were provided to Ricks both individually and through his company FRH on September 27, 2019, October 1, 2019, and September 22, 2020, and courtesy copies were provided to Isaac Cohen (the Chief Executive Officer of FRH ("Cohen")) on October 19, 2020 (who, upon information and belief, forwarded the IHE invoices to Ricks).  These invoices amount to $4,599,859.30, and were retained by Ricks without objection.

17.     Packing slips confirming Ricks' receipt of these starts previously were provided by Altman to Ricks, and courtesy copies of these packing slips again were provided to Cohen on October 19, 2020 (who, upon information and belief, forwarded these packing slips to Ricks).

18.     Hence, Ricks wrongfully has been withholding and refusing to pay partnership funds in the amount of $4,599,859.30 (which includes $265,043.30 owed by Ricks through FRH, and such amount was confirmed in an e-mail by Cohen).

19.     Due to Ricks' wrongful failure and/or refusal to make any payments to IHE for any of its invoiced amounts totaling $4,599,859.30, the partnership's associated expenses currently exceed the total revenue received, and the partnership is operating at a loss.

20.     Correspondence between and/or among Leago, Ricks, Cohen, Altman, and third-parties confirms Ricks' receipt of starts sold by IHE, Ricks' receipt of IHE's invoices for the

75282345.7

stars, and Ricks' refusal and/or failure to pay for the starts.  For example:

- By e-mail dated July 11, 2019, Cohen confirmed that Ricks' company FRH had "began receiving these invoices last week."

- By e-mail dated August 7, 2019, Felicia DuPont of High Grade Hemp Seed Inc. e-mailed Ricks a report on his seeds, noting that the report "matches your invoice."

- By e-mail dated August 26, 2019, Ricks and Cohen received a detailed spreadsheet from Leago with an Altman summary containing sales order numbers, invoice numbers, invoice totals, customer names, billing information, revenue amounts, and seed basis that "shows the overall total and balances."

- In an e-mail exchange dated September 9, 2019, Cohen confirmed that Altman and IHE had provided its invoices for all starts, and Ricks stated "OK good.  I just want IHE to send, or I guess resend, the invoices for [my farms or joint ventures]."

- By e-mail dated September 27, 2019, Leago provided Ricks with links to: (i) the IHE invoices for starts sold and distributed by IHE to Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures; and (ii) another spreadsheet containing financials.

- By e-mails dated October 1, 2019, both Ricks and Cohen (on behalf of FRH) were provided IHE invoices for starts sold and distributed by IHE to Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures, detailing the quantity, rate, and dollar amount of the starts received.

- By e-mail dated October 2, 2019, Cohen (on behalf of FRH) provided Ricks and Leago a detailed spreadsheet with Ricks' farms, invoice numbers, quantities, and amounts owed with tax and without tax.

- By e-mail dated October 4, 2019, Melody Ederer of Altman e-mailed Ricks and Leago a spreadsheet of Altman invoices, detailing the invoice numbers and amounts owed.

- By e-mail dated August 5, 2020, Ken Altman of Altman e-mailed Ricks and Leago a report on what Altman received from them in 2019.

- By e-mail dated October 7, 2020, Leago provided Ricks and Cohen a reconciliation and the accounting back-up for that reconciliation, and demonstrated that the information contained therein already had been provided to Ricks and Cohen.

- By e-mail dated October 19, 2020, Leago provided Cohen courtesy copies of all unpaid IHE invoices and packing slips confirming that the starts sold and distributed by IHE were received by Ricks, Ricks' company (FRH), and Ricks' farms or joint ventures.

75282345.7

- By e-mail dated October 20, 2020, Cohen stated to Leago that he would forward Ricks courtesy copies of all unpaid IHE invoices and the corresponding packing slips, and that Ricks and Leago already had done a "reconciliation" based on the partnership's financials which "calculated [Leago's] profits" and that the amount owed by Ricks/FRH to IHE was over $500,000.

**B.**      **Ricks Tortiously Interferes with Leago's Business Relations**

21.      Ricks intentionally, willfully, and maliciously has been interfering with Leago's business relations, such as Leago's business relationship with Altman.

22.      Leago and Altman have a business relationship whereby Leago produced his own specialty hemp seeds to be grown into starts by Altman.

23.      Leago paid Altman approximately $1,299,440 for 2,930,253 starts that were grown at Altman.  Altman, however, miscalculated the amount of sales tax Leago owed to Altman and therefore Leago overpaid Altman the amount of $153,898.42.

24.      In e-mails dated September 27, 2019 and September 15, 2020, Altman further confirmed that it owes $153,898.42 to Leago for a sales tax overpayment made by Leago to Altman.

25.      By e-mail dated October 7, 2020 to Altman, Ricks, and Cohen, Leago demonstrated to Ricks that $153,898.42 was due to Leago as a result of his sales tax overpayment to Altman and stated, "[b]efore anyone draws a line in the sand, let's agree to have Altman wire me the $153,898.42 that it agreed is owed to…me."

26.      By e-mail dated October 8, 2020 to Leago (copying Altman), Ricks asserted that "there are definitely some discrepancies and inaccuracies" with Leago's reconciliation of amounts owed by Altman to Leago, and maliciously blocked Altman's payment to Leago by asserting that he "cannot agree to the release…of the $153,898.42 to the exclusion of me/FRH….I believe we have put Ken and Altman Nursery in a very awkward position and the

75282345.7

only thing that they can do is hold the money until we come to a resolution between us."

27.     Ricks' representations in his communications concerning Leago's funds were false and designed to interfere with Leago's business relationship with Altman, since Ricks was fully aware that Altman owes $153,898.42 to Leago for a sales tax overpayment made by Leago.

28.     Indeed, Ricks' statements in his October 8, 2020 e-mail were disparaging, derogatory, and made with wanton and malicious disregard for the truth of those statements.

29.     Ricks' conduct, including his October 8, 2020 e-mail, has caused and continue to cause injury to the name, business and reputation of Leago and IHE.

30.     Ricks' wrongful and malicious actions, set forth above, induced or otherwise caused Altman not to pay back Leago the funds owed to him.

31.     Further, upon information and belief, Ricks' October 8, 2020 e-mail was made with malice with the intent to harm or with reckless disregard of the truth, without regard to its consequences, such that a reasonably prudent person should anticipate that damage to another will naturally follow from it.

32.     Ricks' actions were for the sole purpose of inflicting harm on Leago and IHE. Ricks clearly was inducing or otherwise causing Altman not to pay Leago the agreed-upon sales tax overpayment made by Leago to Altman.

## V.    CLAIMS

### FIRST CLAIM FOR RELIEF

***Breach of the Partnership Agreement and Implied Covenant of Good Faith and Fair Dealing***

33.     Leago incorporates all prior paragraphs by reference.

34.     The Partnership Agreement has the force and effect of a contract as between the Leago and Ricks.

75282345.7

35.     Under well-settled Colorado law, all contracts contain an implied covenant of good faith and fair dealing.

36.     Good faith means, *inter alia*, acting in a reasonable manner, and not trying to thwart the other contracting party's reasonable expectations. Specifically, each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance, and that good faith performance of a contract involves faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.

37.     As set forth more fully above, Ricks breached the Partnership Agreement, including the covenant of good faith and fair dealing implicit in the Partnership Agreement, by, among other things: failing and/or refusing to pay the agreed-upon 10% management fee owed to IHE for its oversight and management of Altman's growth of the starts; and failing and/or refusing to pay IHE over $4.5 Million for starts sold and distributed by IHE to Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures.

38.     Leago is not in breach of the Partnership Agreement and has fulfilled its obligations under it.

39.     Despite due demand, the above breaches by Ricks of the Partnership Agreement have not been cured.

40.     As a direct result of the bad faith and willful breaches of the Partnership Agreement, and the covenant of good faith and fair dealing implied therein by Ricks, Leago has suffered actual injury.

41.     Leago is entitled to recover compensatory damages for Ricks' breaches of the Partnership in an amount to be determined at trial, but which is believed to be not less than $4,500,000.00.

## SECOND CLAIM FOR RELIEF

### *Account Stated*

42.     IHE incorporates all prior paragraphs by reference.

43.     From June 26, 2019 through August 22, 2019, starts sold by IHE were shipped to and received by Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures. IHE invoices for these starts, dated June 25, 2019 – August 26, 2019, were provided to Ricks both individually and through his company FRH on September 27, 2019, October 1, 2019, and September 22, 2020, and courtesy copies were provided to Ricks by Cohen on October 19, 2020 (the "Invoices").  The Invoices amount to $4,599,859.30.

44.     IHE provided Ricks with the Invoices evidencing Ricks' indebtedness to IHE and the partnership.

45.     At no time from September 27, 2019 to the date of this Complaint did Ricks refute or dispute the amounts set forth on the Invoices, or otherwise object to the Invoices issued by IHE.

46.     Rather, Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures accepted the starts comprising the Invoices without objection.

47.     The Invoices provided to Ricks evidences his indebtedness of $4,599,859.30.

48.     Ricks has failed to pay his indebtedness.

49.     Accordingly, there exists an account stated between IHE and Ricks in the amount of $4,599,859.30, no part of which has been paid by Ricks, although duly demanded by Leago and/or IHE.

50.     As a result of the foregoing, Leago and/or IHE is entitled to recover compensatory damages in an amount to be determined at trial, but which is believed to be not less than

75282345.7

$4,500,000.00.

## **THIRD CLAIM FOR RELIEF**

### *Goods Sold and Delivered*

51.    IHE incorporates all prior paragraphs by reference.

52.    Ricks has failed and/or refused to pay IHE over $4.5 Million for starts that Ricks specifically requested, and were sold and distributed by IHE to Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures.

53.    From June 26, 2019 through August 22, 2019, at Ricks' specific request, starts sold by IHE were shipped to and received by Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures.  The Invoices were provided to Ricks both individually and through his company FRH on September 27, 2019, October 1, 2019, and September 22, 2020, and courtesy copies were provided to Ricks by Cohen on October 19, 2020.  The Invoices for the starts sold to and received by Ricks amounts to $4,599,859.30.

54.    Packing slips confirming Ricks' receipt of these starts previously were provided by Altman to Ricks, and courtesy copies of these packing slips again were provided to Ricks by Cohen on October 19, 2020.

55.    Ricks, individually and on behalf of his company (FRH), affiliated farms or joint ventures accepted delivery of the starts without objection or complaint.

56.    Ricks has failed to pay any of the $4,599,859.30 in goods sold by IHE and owed to the partnership, although duly demanded by IHE.

57.    As a result of the foregoing, IHE is entitled to recover compensatory damages in an amount to be determined at trial, but which is believed to be not less than $4,500,000.00.

75282345.7

## FOURTH CLAIM FOR RELIEF

### *Tortious Interference with Business Relations*

58.     Leago incorporates all prior paragraphs by reference.

59.     Ricks' conduct, as set forth more fully above, was unlawful or for the sole purpose of inflicting intentional harm on Leago and his business relationships.

60.     As set forth more fully above, Ricks was aware of Leago's business relations with Altman, was aware of Altman's agreement to grow starts provided by Leago and to reimburse Leago for his sales tax overpayment, and was aware that Leago and Altman spent substantial time and resources in establishing a business relationship with each other.

61.     Specifically, Ricks knew that Leago paid Altman approximately $1,299,440 for 2,930,253 starts that were grown at Altman, and that Altman miscalculated the amount of sales tax Leago owed to Altman and therefore Leago overpaid Altman the amount of $153,898.42 – and made false and malicious statements with the sole intent to injure Leago.

62.     Ricks' conduct was directed at the individuals and entities with whom Leago had a relationship with, including Altman.

63.     As set forth more fully above, Ricks' conduct was malicious and not motivated by financial gain.

64.     Ricks' interference with Leago's unique business and economic relations was accomplished by wrongful means and/or with Ricks' sole purpose of harming Leago as it was directed at Leago's business relationships (*i.e.*, Altman).

65.     Leago had a reasonable expectation that his business and economic relations would not be impeded by Ricks' malicious and wrongful interference.

66.     But for Ricks' wrongful conduct, Leago's business with Altman would have not

75282345.7

been disrupted. Instead, as result of Ricks' wrongful interference, Leago's business relations were disrupted.

67.     As set forth above, Ricks wrongfully and tortiously interfered with Leago's business relations.

68.     As is also set forth above, intentionally and for the improper purpose of harming Leago, Ricks wrongfully has tortiously interfered with Leago's business relations.

69.     Leago has lost actual and prospective business relationships, been deprived of future business dealings, lost business contacts and referrals, and has suffered damage to his reputation due to Ricks' actions.

70.     The conduct described herein constituted a tortious, unreasonable, and unprivileged interference with Leago's business relations through the use of wrongful and unfair means, as a direct result of which Leago has suffered actual injury. Ricks' actions were deliberately intended to cause damage to Leago.

71.     Leago is entitled to recover compensatory damages for Ricks' tortious interference in an amount to be determined at trial, but which is believed to be not less than $150,000.

## FIFTH CLAIM FOR RELIEF

### *Promissory Estoppel*

72.     Plaintiffs incorporate all prior paragraphs by reference.

73.     In or about April 2019, Ricks promised Plaintiffs: (i) that they each contribute specialized hemp seeds to Altman to be grown into starts at Altman; (ii) that the seeds each party contributed would be accounted for internally as an expense of $1.00 per seed; (iii) that Leago's company IHE would sell and distribute the starts to various individuals, entities, and farms in

accordance with invoices that IHE sent to and were received by such individuals, entities, and farms; (iv) both IHE and Ricks' company FRH receive a management fee to oversee and manage Altman's growth of the starts (FRH received a 20% management fee, and IHE received a 10% management fee); (v) IHE and/or third-party sellers receive a 3% sales commission on each paid invoice; and (vi) after IHE received payments of all invoiced amounts, Ricks and Leago would be entitled to a percentage of the total revenue received (minus all associated expenses) proportionate to the number of starts distributed and sold from the seeds that each party contributed (*e.g.*, if Leago sold 2.8 million starts and Ricks sold 1.2 million starts, Leago would receive 70% of the revenues after deducting expenses, and Ricks would receive 30% of the revenues after deducting expenses).

74.     Ricks made promises to Plaintiffs in the form of its acceptance of all the above material terms, and his promises that Ricks would pay Plaintiffs for starts that Ricks specifically requested, and that were sold and distributed by IHE to Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures.

75.     Ricks made promises which he reasonably should have expected to induce action or forbearance of a definite and substantial character on the part of Plaintiffs.

76.     Ricks reasonably knew or should have known that Plaintiffs would rely on Ricks' acceptance of, and promises regarding, among other things: items (i) through (vi) in paragraph 69 herein; and the fact that Ricks would pay Plaintiffs for starts that Ricks specifically requested, and that were sold and distributed by IHE to Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures, despite due demand by IHE.

77.     Plaintiffs did, in fact, reasonably rely on Ricks' promises by, among other things, not seeking to sell and distribute, and/or selling and distributing, starts grown by Altman with or

to other persons or entities.  Plaintiffs' forbearance from selling and distributing starts to other individuals or entities predicated on Ricks' promise to pay for the starts sold to and received by Ricks, his company, and/or his affiliated farms or joint ventures.

78.     Accordingly, Plaintiffs' action or forbearance was induced by Ricks' promises.

79.     As set forth above, Plaintiffs' reliance on Ricks' promises was detrimental because, among other things: from June 26, 2019 through August 22, 2019, at Ricks' specific request, starts sold by IHE were shipped to and received by Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures; the Invoices were provided to Ricks both individually and through his company FRH on September 27, 2019, October 1, 2019, and September 22, 2020, and courtesy copies were provided to Ricks by Cohen on October 19, 2020; the Invoices for the starts sold to and received by Ricks amounts to $4,599,859.30; Ricks, individually and on behalf of his company (FRH) and affiliated farms or joint ventures, accepted delivery of the starts without objection or complaint; and Ricks has failed to pay any of the $4,599,859.30 in goods sold by IHE and owed to the partnership.

80.     Accordingly, in the alternative, circumstances exist such that injustice can be avoided only by enforcement of Ricks' promises.

81.     In the alternative, Ricks' acceptance of his promises must be enforced to prevent injustice.

### SIXTH CLAIM FOR RELIEF

#### *Unjust Enrichment*

82.     Plaintiffs incorporate all prior paragraphs by reference.

83.     From June 26, 2019 through August 22, 2019, at Ricks' specific request, starts sold by IHE were shipped to and received by Ricks, Ricks' company (FRH), and Ricks'

75282345.7

affiliated farms or joint ventures.  The Invoices were provided to Ricks both individually and through his company FRH on September 27, 2019, October 1, 2019, and September 22, 2020, and courtesy copies were provided to Ricks by Cohen on October 19, 2020.  The Invoices for the starts sold to and received by Ricks amounts to $4,599,859.30.

84.     Packing slips confirming Ricks' receipt of these starts previously were provided by Altman to Ricks, and courtesy copies of these packing slips again were provided to Ricks by Cohen on October 19, 2020.

85.     Ricks, individually and on behalf of his company (FRH), affiliated farms or joint ventures accepted delivery of the starts without objection or complaint.

86.     Ricks has failed to pay any of the $4,599,859.30 in goods sold by IHE and owed to the partnership, although duly demanded by IHE.

87.     Ricks has been unjustly enriched from his and his company's and affiliated farms' receipt of the starts, to Plaintiffs' detriment.

88.     It is repugnant to the principles of good conscience and equity to permit Ricks to retain the starts and/or other consideration.

89.     In the alternative, Plaintiffs are entitled to restitution in an amount to be determined at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant and respectfully request:

(i)     For an award of a money judgment on their breach of contract and implied covenant of good faith and fair dealing, account stated, goods sold and delivered, tortious interference with business relations, and other claims for damages in an amount to be determined at trial, but not less than $4,500,000;

75282345.7

(ii)     Alternatively, a money judgment or restitution on their promissory estoppel and

unjust enrichment claims to prevent injustice;

(iii)    All other damages, costs, penalties, attorneys' fees, disbursements, and other

relief that may be available and warranted by law or equity;

(iv)    Awarding pre-judgment and post-judgment interest on all sums awarded at the

rate prescribed by law; and

(v)     Granting such other and further relief as this Court deems just and proper.


DATED this 4th day of November, 2020.

Respectfully submitted,

*s/ Ghislaine G. Torres Bruner*
Ghislaine G. Torres Bruner, #47619
Gabriel Levinson
Darnell S. Stanislaus
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Phone: (212) 413-2853
Email: gbruner@polsinelli.com
          glevinson@polsinelli.com
          dstanislaus@polsinelli.com

**Attorneys for Michael Leago and IHE
Productions LLC**

Plaintiffs' address:
8725 Steamcrest Drive
Boulder, CO 80302

75282345.7

## **VERIFICATION**

I, Michael Leago, individually and as the owner of Plaintiff IHE Productions LLC, have read this Complaint and I affirm that the factual statements are true to the best of my knowledge. I make this verification subject to penalties for perjury.

Dated: November 4, 2020

_____
MICHAEL LEAGO

75282345.7

## **CERTIFICATE OF SERVICE**

The Verified Complaint shall be served pursuant to F.R.C.P. 4.  The below certification of service is for future use in ordinary pleadings.

I hereby certify that on this 4th day of November, 2020, I served a true and correct copy of the foregoing via CM/ECF, which will send electronic notification to all parties and their counsel.

s/       Jessica Vecchio
JESSICA VECCHIO

75282345.7