IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03297-NRN

MICHAEL LEAGO and
IHE PRODUCTIONS LLC,

Plaintiffs,

v.

JEREMY RICKS,

Defendant.

---

**ORDER ON
DEFENDANT RICKS' MOTION TO DISMISS
PLAINTIFFS' VERIFIED AMENDED COMPLAINT
(DKT. #25)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This case arises from a hemp plant production partnership gone bad. Plaintiffs

Michael Leago ("Mr. Leago" or "Leago") and IHE Productions LLC ("IHE") claim that Mr.

Leago entered into an oral partnership agreement with Defendant Jeremy Ricks ("Mr.

Ricks" or "Ricks") for the sale of sale and distribution of hemp seeds and young plants,

called "starts." In brief, it is alleged that Mr. Ricks breached this deal by ordering for

himself nearly $4.6 million worth of the partnership's hemp starts and then not paying

for those plants. Defendant Ricks, for his part, claims that the suit is being brought

against the wrong parties, on the wrong contracts, and for the wrong claims. Mr. Ricks

agrees that there was a partnership agreement, but asserts it was not with him. Instead,

Leago's partnership was with a certain business entity, not Ricks as an individual.

Defendant Ricks also asserts that there are other parties (including the actual party to the partnership), indispensable to the fair resolution of this lawsuit, who are Colorado residents and whose presence will destroy diversity jurisdiction. Because those indispensable parties are not presently in this lawsuit, and adding them will destroy diversity, Mr. Ricks argues the case must be dismissed under Rule 19(b), which allows for the dismissal of actions that in equity and good conscience cannot proceed in the absence of required parties. Mr. Ricks also moves to dismiss certain of Plaintiffs' claims for failure to state a claim under Rule 12(b)(6).

**Procedural Background**

This case is before me on consent of the Parties for all purposes consistent with 28 U.S.C. § 636(c), pursuant to an order of reference by Chief Judge Brimmer dated December 1, 2020. (Dkt. #15.) Currently before the Court is Defendant's Rule 12(b) Motion to Dismiss Plaintiffs' Verified Amended Complaint. (Dkt. #25.)

Plaintiff filed a Verified Amended Complaint on December 30, 2020. (Dkt. #21.) Defendant Ricks filed his Motion to Dismiss on January 18, 2021. In addition, on January 29, 2021, Mr. Ricks filed a motion to stay discovery pending resolution of the Motion to Dismiss. (Dkt. #26.) Plaintiffs filed a Response to the Motion to Dismiss on February 8, 2021. (Dkt. #29.) Mr. Ricks filed his Reply in support of the Motion to Dismiss on February 22, 2021. (Dkt. #36.) Plaintiffs sought to strike Defendant's abstention argument, found for the first time in the Reply. (Dkt. #37.) On February 25, 2021, I denied the Motion to Strike but gave Plaintiffs leave to file a sur-reply responding to the abstention arguments. (*See* Dkt. #39.) Plaintiffs filed their Sur-reply on February 26, 2021. (Dkt. #40.)

I heard argument on the Motion to Dismiss on March 1, 2021. I took the Motion under advisement and granted Defendant's Motion to Stay Discovery pending determination of the Motion to Dismiss. (*See* Dkt. #41.) Having reviewed the Parties' respective submissions, considered their arguments, and associated caselaw, Defendant Ricks' Motion to Dismiss will be **DENIED**.

### Plaintiffs' Verified Amended Complaint

This is a breach of contract/breach of partnership case. According to the Verified Amended Complaint, Leago is a well-known farmer and producer of specialty hemp seeds. IHE is a single member Oregon limited liability company, with a principal place of business in Colorado. Leago is the sole member of IHE, which is alleged to be a leading company in the hemp industry, being the first licensed bonded hemp broker in the United States helping farmers to buy and source industrial hemp genetics (such as hemp seeds and "starts—young plants) since 2016. (Dkt. #21 at ¶ 3.)

Defendant Ricks resides in Encinitas, California. (*Id.* at ¶ 7.)

Plaintiffs allege that in April 2019, Leago formed a partnership with Ricks for the purpose of growing, selling, and distributing specialized hemp starts across the United States using IHE's expertise and nationwide distribution network for the benefit of the partnership. In what may ultimately prove to have been a very bad choice, the partnership was formed via an oral agreement.

According to the Verified Amended Complaint, Ricks and Leago agreed they would:

(i)     contribute on their own, and pool together for the benefit of the

        partnership, specialized hemp seeds;

(ii)     grow their collective contribution of hemp seeds into starts at Altman

          Plants ("Altman"); and

(iii)    sell and distribute the starts.

(*Id.* at ¶ 10.)

It was further agreed (again orally) that each of them would be entitled to his respective pro rata share of profits obtained from the partnership's sale of the starts grown by Altman. The pro rata shares of profits, in turn, would be determined according to relative percentage of hemp seeds each partner contributed that was successfully grown into starts and subsequently sold. (*Id.* at ¶ 11.)

There were more oral terms regarding the conduct of the business of the partnership, including specifying payment of management fees and use of expertise and experience to coordinate the sale and distribution of partnership starts. These additional oral terms of the partnership included:

(i)      that the hemp seeds each party contributed would be accounted for

          internally by the partnership at an expense of $1.00 per seed;

(ii)     that Ricks would pay IHE a 10% management fee to oversee and manage

          Altman's growth of the starts;

(iii)    that Leago would pay Ricks' management company, Front Range

          Harvest, LLC ("FRH"), a 20% management fee to oversee and manage

          Altman's growth of the starts;

(iv)     that IHE, on behalf of the partnership, would use its logistical expertise

          and experience to coordinate the sale and distribution of the partnership's

          starts (except for any starts that were sold to a partner);

4

(v)     that IHE, on behalf of the partnership, would use its logistical infrastructure to oversee and track the sale and distribution of the partnership's starts by, among other things, preparing invoices for starts sold and distributed on behalf of the partnership (whether sold to a partner or not) and collecting all monies owed to the partnership in connection with the sale of such starts;

(vi)    that IHE would receive a 3% sales commission on each paid invoice; and

(vii)   that their partnership would be limited to the initial hemp seeds they contributed and that were grown into starts.

(*Id.* at ¶ 12.)

Finally, it is alleged that there was an additional oral term that would govern the partnership: Ricks was to have the sole authority to (i) determine the number of hemp seeds Ricks would contribute to the partnership; and (ii) to allocate to himself any amount of the partnership starts and to prioritize his purchase of starts over other third-party purchasers. (*Id.* at ¶ 13.)

All of the above terms are defined as the "Partnership Agreement" in the Amended Complaint.

The Verified Amended Complaint alleges that Ricks and Leago then "ratified" the Partnership Agreement through their course of conduct and dealing, including via correspondence about the partnership and its business operations and Ricks' receipt, without objection, of invoices for starts that Ricks purchased from the partnership, totaling approximately $4.6 million. (*Id.* at ¶ 14.)

**Ricks' Alleged Breaches of the Agreement**

According to the Verified Amended Complaint, by the summer of 2019, the contributed hemp seeds had grown into starts for sale and distribution through IHE. (*Id.* at ¶ 19.) Ricks decided to allocate to himself approximately two million of the partnership's starts, valued at approximately $4.6 million. (*Id.* at ¶ 20.) Ricks asked Leago to send the invoices for the starts to him directly and Ricks told Leago that he would assume the financial obligation for paying for the starts he purchased for himself. (*Id.* at ¶ 21.)

Ricks then asked that much of the $4.6 million in starts he purchased from the partnership be distributed directly to other of Ricks' business ventures, such as to three farms with which Ricks had formed business relationships independent of the partnership. Per Ricks' request, the $4.6 million in starts Ricks purchased were shipped directly to Ricks' other business partners' farms from June 26, 2019 through August 22, 2019. (*Id.* at ¶¶ 22–23.) Per Ricks' request, the invoices for these starts were issued directly to Ricks and retained by him without objection. (*Id.* at ¶¶ 24–26.) Although a number of the invoices set forth the names of Ricks' unrelated business partners' farms (such as 7C Farms, Sangre de Cristo, and Birds & Bees), Ricks repeatedly agreed and promised Leago that Ricks was personally liable for and would pay the amounts due on the invoices. (*Id.* at ¶ 28.)

Ricks is alleged to have breached the Partnership Agreement by failing to pay the 10 percent management fee Ricks owed for IHE's oversight and management of the growth of starts. This management fee amounts to $406,621.45. (*Id.* at ¶ 32.) In addition, and more important, Ricks has refused to pay for the $4.6 million in starts that

he purchased from the partnership. This amount is alleged to have been due and owing to the partnership for over a year. (*Id.* at ¶ 33.)

### Plaintiffs' Claims for Relief

Plaintiffs bring seven different claims for relief.

First, Leago brings a claim for breach of the Partnership Agreement, asserting that Ricks breached the Agreement by failing and/or refusing to pay the agreed-upon 10% management fee owed to IHE for its oversight and management of Altman's growth of the partnership's starts; and failing to pay the $4.6 million in invoices for hemp starts Ricks had purchased from the partnership. Leago claims that as the sole owner of IHE, he has been damaged by the failure to pay the management fee to the tune of $406,621.45.

Second, Plaintiffs bring a claim for breach of the Partnership Agreement's implied duty of good faith and fair dealing.

Third, Plaintiffs bring a claim for an account stated, claiming as damages no less than $4.5 million.

Fourth, Plaintiffs bring a claim for "goods sold and delivered," asserting that Ricks has failed to pay for the $4.6 million in starts purchased from the partnership.

Fifth, Leago makes a claim for breach of fiduciary duty based on Ricks' conduct towards him as partner, including the failure to provide full, fair, open, and honest disclosure of partnership accounting and general business, and citing, among other things, Ricks' improper direction to Altman not to pay Leago funds owed to him.

Sixth, Leago brings a claim for promissory estoppel. In support of this claim, Leago alleges Ricks repeatedly promised Leago that he would be financially

responsible for paying the partnership for his purchase of almost two million of the partnership's starts. Relying on Ricks' promises, Leago permitted the sale of partnership starts to Ricks and the starts were distributed directly to Ricks' other business ventures.

Finally, Leago brings a claim for unjust enrichment, again for the receipt by Ricks or Ricks' associated farms of $4.6 million in starts for which Ricks has refused to pay. Per the Verified Amended Complaint, "Ricks has been unjustly enriched by the starts he prioritized and allocated to himself for purchase in connection with his other business ventures, but never paid for, which has had a detrimental impact on Leago, who has been unable to recoup his share of profits attributable to the sale and distribution of those starts." (Dkt. #21 at ¶ 103.)

**Ricks' Motion to Dismiss**

The major factual point underpinning Ricks' motion to dismiss is that he is not individually responsible for anything. He was not personally in a partnership with Leago. Instead, it was FRH, a Colorado limited liability company of which he is a member, that created the partnership with Leago. As for the millions of dollars of starts that were sent to farms (allegedly at his direction), Ricks says it is those farms that owe money for those starts, not Ricks personally. In support of his motion to dismiss, Mr. Ricks has submitted his own affidavit. (*See* Dkt. #25-2.) In that affidavit he swears, among other things, that:

- He is a member of FRH.

- He has authority to transact business on behalf of FRH.

- Prior to any relationship with Leago, FRH entered into an agreement with Altman to grow hemp seeds into starts for FRH's farms.

8

- FRH subsequently decided to sell extra starts and approached Leago with the intent to form a partnership for that purpose.

- In his capacity as a member of FRH, Ricks worked with Leago on the business of the partnership—but always on behalf of FRH.

- FRH claims an interest in the subject matter of the litigation.

(*Id.* at ¶¶ 4–13.) Attached to the Ricks affidavit as an exhibit were the numerous invoices referred to in the Verified Amended Complaint reflecting bills issued by International Hemp Exchange for sales of hundreds of thousands of seed starts. Most of the invoices show the "bill to" address as "7C Farms," "Sangre de Christo," or "Birds & Bees." But two of the invoices do show they were to billed to "Jeremy Ricks." (*See id* at 29–30.)

Also included with Ricks' Motion to Dismiss is a declaration by Isaac Cohen who also purports to be a member of FRH. (*See* Dkt. #25-3.) Mr. Cohen confirms that Ricks, on behalf of FRH, formed a partnership with Leago wherein FRH and Leago were partners in the partnership. (*Id.* at ¶¶ 11–12.)

In support of his Motion to Dismiss, Ricks argues, first, that there are indispensable parties who, if joined, would defeat diversity. As required and indispensable parties, Ricks first points to FRH, the entity he insists formed the partnership with Leago. Ricks says it was FRH (or other companies) that purchased seed starts, not him personally. As confirming support, Ricks points to allegations in Plaintiffs' original complaint (Dkt. #1), where it was alleged that starts were sold to and shipped to "Ricks, Ricks' company (FRH), and Ricks' affiliated farms or joint ventures" and payments were due and owing from the same. (*See* Dkt. #1 at ¶¶ 15–16.) (In the

Amended Complaint, the allegations of FRH buying some portion of the starts is missing.) Ricks also points to one of the invoices referenced in the Verified Amended Complaint identifying "Front Range Harvest" as the purchaser of $447,142.50 in starts. Ricks argues that this shows Plaintiffs have "alleged that FRH owes them money for the starts over which they have initiated this action." (Dkt. #25 at 4.) Ricks argues that Plaintiffs have directly contradicted the sworn allegations in the original complaint to now allege that Ricks personally purchased $4,599,858.30 in starts and then "requested" that the starts be "distributed directly to his other business ventures . . ." Ricks argues that this is just clever (and arguably disingenuous) pleading, to get around the problem of suing FRH—which Plaintiffs cannot do without destroying diversity jurisdiction.

Ricks clarifies in a footnote that he is not saying that he should be dismissed and replaced by FRH as a party, only that FRH is an additional defendant that "should have been joined but was intentionally excluded by Plaintiffs for strategic purposes." (Dkt. #25 at 5 n.2.)

Ricks argues that because it was FRH and not Ricks that formed the partnership with Leago, "FRH's ability to protect its interest in this case will be substantially impaired and FRH will be exposed to substantial risk of inconsistent obligations if it is not joined." *Id.* at 5. Other than saying over and over that FRH, rather than Ricks, is the proper defendant, Defendant's motion provides little reasoning to support the conclusory assertion that FRH is both a required and indispensable party.[1]

---

[1] *See*, *e.g.*, Dkt. #25 at 6 ("While Plaintiffs allege these claims against Ricks, as the actual partner, FRH has an interest in the resolution of these claims, which should have been brought against FRH. Failure to join FRH prevents full and proper resolution of

Ricks next argues that 7C Farms LLC, Sangre de Christo Farms, and Gen 8 Farms LLC also are required parties. Ricks points to the twenty-three invoices relied upon by Plaintiffs and the fact that sixteen of those invoices (totaling $2.9 million of the $4.6 million in unpaid invoices and comprising sixty-four percent of the total claimed damages), are addressed to 7C Farms LLC. Another twenty percent, more than $900,000, was billed to Sangre de Christo Farms. And per the invoices, Gen 8 owes another $171,000 of the claimed damages. Ricks argues that each of these farm entities are necessary parties "because they each have an interest in any claims to establish they owe a debt. If not joined, then their interests and [sic] will be substantially prejudiced." (*Id.* at 7.)

Ricks follows up with a related, but different, argument. Ricks points to the allegation in the Verified Amended Complaint that, while the vast majority of the invoices set forth the names of Ricks' unrelated business partners' farms, "Ricks repeatedly agreed and promised Leago that Ricks was personally liable for and would pay the Invoices . . .." (*Id.* (citing Dkt. #21 at ¶ 28).) Ricks argues that this is an allegation of a guarantee agreement, not an agreement by Ricks himself to buy the starts. And, under Colorado's version of the statute of frauds, Colo. Rev. Stat. § 38-10-112, any such claim is barred as oral guarantee agreement. In Ricks' view, any claims based on the guarantee fail as a matter of law, and absent joinder of the farm entities, the Court cannot accord full relief to Plaintiffs. (*Id.* at 7–8.)

---

these claims. Therefore, it is clear that FRH is a necessary party who must be joined in this action.").

Citing the affidavits and declarations attached as exhibits to Ricks' motion, as well as articles of organization for the farm entities of which the Court is entitled to take judicial notice, Ricks argues that these LLC entities are Colorado citizens who cannot be joined without destroying complete diversity and the Court's subject matter jurisdiction.

Beyond the argument for dismissal based on the failure to join indispensable parties, Ricks also argues certain claims in the Verified Amended Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

First, Ricks alleges that the claim for breach of a partnership agreement fails because Leago failed to provide an accounting prior to initiating litigation. Citing *Yoder v. Hooper*, 695 P.2d 1182, 1186 (Colo. App. 1984), *aff'd*, 737 P.2d 852 (Colo. 1987), Ricks maintains that Colorado law provides, as a general rule, that "an action for damages for breach of partnership obligations may not be maintained in the absence of an accounting." (Dkt. #25 at 11.) Without having provided an accounting of the partnership, Ricks claims Plaintiffs cannot maintain their claims.

For his second failure to state a claim argument, Ricks claims that Leago has failed to properly allege a breach of the partnership agreement because none of the claimed misconduct (failure to pay $4.6 million in unpaid invoices and failing to pay IHE a 10 percent management fee) constitute breaches of the alleged Partnership Agreement. This is because, Ricks asserts, the terms of the Partnership Agreement in the Verified Amended Complaint do not provide for the sale of any starts to Ricks. Thus, even if Ricks were responsible to pay the invoices, failure to pay cannot be a breach of a partnership agreement that contained no such terms.

Ricks makes other arguments that the Verified Amended Complaint fails to allege the proper elements of breach of the covenant of good faith and fair dealing, breach of fiduciary duty, or a claim for promissory estoppel.

Also, in his Reply in support of the motion to dismiss, Ricks hinted for the first time that this court should abstain from adjudicating this action out of deference to a state court proceeding, captioned *Front Range Harvest LLC v. Leago*, case number 2021-cv-30155, filed in the District Court for Boulder County, Colorado on February 19, 2021. (*See* Dkt. #36 at 1–2 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976))).

**Analysis and Decision on Rule 12(b)(7) and Rule 19**

Rule 12(b)(7) allows for the dismissal of a case if a party fails to join a required party under Rule 19. In order to dismiss a case pursuant to Rule 12(b)(7), the Court must find that (1) the party is a required person under Rule 19(a), (2) joinder of the party is infeasible under Rule 19(b), and (3) dismissal is appropriate.

Wright & Miller explain the task of the court when confronted by a Rule 12(b)(7) motion:

> When faced with a motion under Rule 12(b)(7), the district court will decide whether the absent person should be joined as a party. If it decides that question in the affirmative, the district judge will order the individual or entity who is not before the court brought into the action. However, if the absentee cannot be joined, the court must then determine, by balancing the guiding factors set forth in Rule 19(b), whether to proceed without him or to dismiss the action. The courts are reluctant to grant motions of this type. Thus, a Rule 12(b)(7) motion will not be granted because of the vague possibility that persons who are not parties may have an interest in the action. In general, dismissal is only warranted when the defect is serious and cannot be cured.

5C Wright & Miller *Federal Practice & Procedure* § 1359, at 65–66 (3d ed. 2004).

In reviewing a Rule 12(b)(7) motion, a court must accept all factual allegations in the complaint as true and draw all inferences in favor of the non-moving party. *Flextronics Int'l USA, Inc. v. Sparkling Rink Sys. Innovation Ctr. LTD*, 186 F. Supp. 3d 852, 855 (N.D. Ill. 2016) ("court assumes the truth of operative complaint's factual allegations, though not its legal conclusions"); *Dozier v. Sygma Network, Inc.*, C.A. No. 3:15-CV-2783-B, 2016 WL 949745 at *2 (N.D. Tex. March 14, 2016).

Under Rule 19, a person must be joined as a party when (1) the person's absence will prevent the court from "accord[ing] complete relief among existing parties," or (2) the person has an interest in the subject of the case, and disposing of it in the person's absence will either "impair or impede the person's ability to protect the interest," or create a risk of multiple or inconsistent obligations for an existing party because of the interest. Rule 19(a)(1). As to the question of affording complete relief between the parties, as *Moore's Federal Practice* explains, this provision "requires joinder when nonjoinder precludes the court from effecting relief not in some overall sense, but between extant parties." 4 J. Moore & R. Freer, *Moore's Federal Practice* § 19.03[2][b] (3d ed. 2009). "Properly interpreted, the Rule is not invoked simply because some absentee may cause future litigation . . .. The fact that the absentee might later frustrate the outcome of the litigation does not by itself make the absentee necessary for complete relief." *Id.* (footnotes omitted).

"The proponent of a motion to dismiss under [Rule] 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band of Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). The

moving party may satisfy its burden under Rule 12(b)(7) by providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Id.* (internal quotation marks omitted).

Per Wright & Miller, "There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a)." 7 Wright, Miller & Kane, *Federal Practice and Procedure* § 1604, at 33 (2019 ed.). "The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them." *Knutzen v. Eben Ezer Lutheran Housing Ctr.*, 815 F.2d 1343, 1356 (10th Cir. 1987) (citing Wright & Miller).

If it is not feasible to join the required person, a court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Four factors are relevant to this analysis: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) the degree to which "protective provisions in the judgment," "shaping the relief," or "other measures" might mitigate any prejudice; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4) " whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.*

In this case, assuming the truth of the Verified Amended Complaint's allegations essentially ends the Rule 19 inquiry. Per the Verified Amended Complaint, the Partnership Agreement was between Ricks and Leago. The promise to pay the partnership for the ordered and delivered starts was made by Ricks to Leago. Ricks'

and Cohen's competing affidavits point the finger at FRH as the other party to the partnership. But submitting affidavits that contradict the allegations in a verified complaint are not enough to meet the Ricks' burden under Rule 19.

Ricks has not explained how the allegations in the Verified Amended Complaint, which I must accept as true, create a risk of inconsistent outcomes or might prove detrimental to the interests of the non-present parties. Here, Leago alleges that he entered into a partnership agreement with Ricks and Ricks is obligated to pay, among other things, for the $4.6 million in starts delivered to farms with which he is associated. Ricks' defenses essentially can be boiled down to: "not me—them!"

First, at this stage, I cannot accept Ricks' own version of the facts. *See Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 917 (D. Kan. 2007) (stating that, when ruling on a Rule 12(b)(7) motion, "any conflicts in affidavits will be resolved in the plaintiff's favor"). But further, it is difficult to understand how Ricks could be somehow subject to inconsistent judgments, or the interests of the absent parties would be adversely affected by a determination of the claims in this case. If a factfinder believes Ricks' defenses and finds that he is not a partner with Leago or that he did not personally agree to pay for the ordered starts, then he is off the hook. If he is deemed to be a partner and responsible for the ordered starts, then Ricks has to pay the judgment in this case. But he would not be liable twice.

The closest similar case I could find on this subject was *Wis. Can Co. v. Banite, Inc.*, 88 F.R.D. 597 (N.D. Ill. 1980), where a Buffalo, New York-based company, Banite Inc., was being sued for cans sold to it and allegedly also delivered to a Canadian affiliate, Banite-Canada. The defendant argued that that the Canadian affiliate (over

whom there was arguably no personal jurisdiction) was a required and indispensable party because it was the defendant's position that cans had been sold directly to the Canadian entity, and the lawsuit should not proceed exclusively against the New York company. The Court rejected the argument, finding that complete relief could be granted against the New York entity only, and the New York entity could defend itself against sales to Banite-Canada "on the simplest of grounds: It is not liable for the debts of another." 88 F.R.D. at 603. This is similar to Ricks' potential defense in this case—he is not liable for the debts of others, whether they be the farms for the starts sold or FRH as partner in the partnership.

The most that could be said is that Ricks potentially could be held liable in this litigation for the hemp starts and found to be a partner in the partnership, without actually having ownership of the starts themselves because the farms to which they were sent claim ownership. But if this is Mr. Ricks' fear, he himself could join the farms in the action as third-party defendants to ensure that, if he is held liable to Leago, Ricks, at the very least, would be granted ownership of the starts delivered to the farms. *See Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir. 1979) (insurer could avoid result of inconsistent verdicts by joining third party defendants, and therefore it could not be said that insurer was subjected to substantial risk of inconsistent obligations warranting dismissal). Based on the foregoing, and absent some more clear explanation as to how either Ricks or the third parties will be meaningfully prejudiced, I cannot conclude that Rule 19 requires joiner of the third parties here, and there is no basis for dismissing this lawsuit for failure to join indispensable parties.

**Analysis and Decision on Rule 12(b)(6)**

Under Rule 12(b)(6), a court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility simply means Plaintiffs have pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is warranted only where the complaint fails "*in toto* to render [plaintiff's] entitlement to relief plausible." *Twombly*, 550 U.S. at 569 n.14 (emphasis in original). Extrinsic materials generally cannot be considered on a Rule 12(b)(6) motion. *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (citation omitted).

Ricks has moved only to dismiss four of the seven claims in the Verified Amended Complaint for failure to state a claim. He has not moved to dismiss the claims for account stated, goods sold and delivered, or unjust enrichment.

**Breach of the Partnership Agreement**

At this early stage, I find that Plaintiffs have adequately alleged breach of a "Partnership Agreement." One of Ricks' objections here is that, under Colorado law, Plaintiffs cannot sue without first providing an accounting. But the Verified Amended Complaint in this case specifically alleges that an accounting was provided, and that Ricks always possessed information requested in an accounting. (*See* Dkt. #21 at ¶¶ 37–39.)

The Verified Amended Complaint alleges an oral partnership agreement. One of the alleged obligations of this agreement was that Ricks was to pay IHE a 10% management fee. At this early stage of the litigation, assuming the truth of the Verified Amended Complaint, I agree with Plaintiffs that Leago has standing to sue Ricks under the Partnership Agreement to enforce that obligation.

**Breach of the Duty of Good Faith and Fair Dealing**

I also agree that, at this early stage, there is no basis to dismiss the "claim" of breach of the duty of good faith and fair dealing. Initially, I question whether a breach of the duty of good faith and fair dealing can be, under the circumstances of this case, properly characterized as a separate claim, as opposed to just another way of articulating the claim for breach of the partnership agreement. Every Colorado contract contains an implied covenant of good faith and fair dealing. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) ("Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing."). "An implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its

rights to those benefits will breach the duty of good faith implicit in the contract." *Mimaco LLC v. Maison Faurie Antiquities*, 221 F.3d 1352 (10th Cir. 2000). Good faith performance of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. Restatement (Second) of Contracts § 205 cmt. a (1981). *See also* Colo. Rev. Stat. §§ 4-1-203 and 4-1-201(19), (imposing obligation of good faith in performance or enforcement of contracts under Uniform Commercial Code). Per the *Amoco Oil* decision, the "duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price or time." 908 P.2d at 498.

Whether and to what extent Ricks may have violated an express obligation under the Partnership Agreement, or instead violated some discretionary duty, will need to be developed through evidence, and cannot be the basis for a motion to dismiss.

### Breach of Fiduciary Duty

On the breach of fiduciary duty claim, Ricks argues that, at most, the Verified Amended Complaint alleges disagreements between Ricks and Leago regarding reconciliation, and that Ricks took partnership starts for his other business without consideration. In Ricks view, neither of these allegations state a claim for breach of fiduciary duty.

But Plaintiffs are correct that "[p]artners in a business enterprise owe to one another the highest duty of loyalty; they stand in a relationship of trust and confidence to each other and are bound by standards of good conduct and square dealing." *Hooper v. Yoder*, 737 P.2d 852, 859 (Colo. 1987) (citations omitted). "Each partner has the right to demand and expect from the other a full, fair, open and honest disclosure of everything

affecting the relationship." *Id.* Here, Plaintiffs allege Ricks violated his fiduciary duty to provide "full, fair, open and honest disclosure of partnership accounting, and general business." (Dkt. #21 at ¶ 87.) Whether Ricks' conduct (if proved) constitutes merely a breach of the partnership agreement, or a deeper breach of the solemn duties owed by one business partner to another cannot be determined at this early stage. If Ricks promised his partner he would pay for starts delivered to his affiliate farm entities, without ever having the intent to pay for them, this could rise to the level of a breach of fiduciary duty. Similarly, if (as is alleged) Ricks instructed Altman to not pay Leago, not for some genuine business reason, but instead to exert leverage over his partner for some other reason, that could potentially constitute a breach of fiduciary duty. *See id.* (alleging that Ricks "improperly directed Altman not to pay Leago by telling Altman to 'hold the money until we come to a resolution between us.'").

### Claim for Promissory Estoppel

Again, at this early stage, Plaintiffs have sufficiently alleged a claim for promissory estoppel as an alternative claim to the breach of partnership agreement claim. *See Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007) (recovery in Colorado on a theory of promissory estoppel is permissible when there is no enforceable contract).

Colorado has adopted the promissory estoppel doctrine as articulated in the Restatement (Second) of Contracts § 90. *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995). The doctrine "encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise." *Kiely v. St. Germain*, 670 P.2d 764, 767 (Colo.

1983). "It provides relief to those harmed because they relied on another's promises, even without an enforceable contract." *G&A Land, LLC v. City of Brighton*, 233 P.3d 701, 703 (Colo. App. 2010) (citing *Vigoda v. Denver Urban Renewal Auth.*, 646 P.2d 900, 905 (Colo.1982)). *See also Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987) (en banc) (if a plaintiff fails to prove a breach of contract claim, he or she may nevertheless be able to recover on a promissory estoppel claim).

The elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). Plaintiffs have adequately alleged that they detrimentally relied on Ricks' promise to pay for starts sold to his affiliated farms or joint ventures and injustice can only be prevented by enforcement of Ricks' promises.

### Abstention

Finally, in his Reply in Support of the Motion to Dismiss, citing the *Colorado River* abstention doctrine, Ricks for the first time mentions that in the event the suit is not dismissed, he will urge the Court to abstain from this case based on the pendency of a recently-filed state court matter. *See Colo. River Water Conservation Dist. V. United States*, 424 U.S. 800 (1976). On the same day he filed his Reply, Mr. Ricks filed a "Notice of Related Case," giving notice that on February 19, 2021 (the Friday before he filed his Reply), in the District Court for Boulder County, Colorado, Ricks and his management company filed a lawsuit captioned *Front Range Harvest LLC et al v.*

*Leago, Michael et al.*, No. 2021-CV-030155. Mr. Ricks represents that the Colorado action "involves substantially the same matters and parties, and arises out the identical transaction and events underlying the current action before this Court." (Dkt. #35.) But a close reading on Mr. Ricks' Reply confirms that he has not yet asked for a stay of the action under the *Colorado River* abstention doctrine. (*See* Dkt. #36 at 2 ("In light of FRH's state court lawsuit, if the Court does not dismiss this matter, Ricks will file a motion seeking to stay this action under the Colorado River abstention doctrine.").) Ricks devoted less than a page to the abstention question in his Reply brief, and I only gave Plaintiffs five pages in a Sur-reply to address the issue. Based on the limited briefing, and the fact that Mr. Ricks has not yet formally moved to have the Court abstain under the *Colorado River* doctrine, I decline to address this issue at this time.

**Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. #25) is **DENIED**. The Parties are ordered that within three days from the date of this Order they are to jointly contact the Court to set a date for a Scheduling Conference.

Dated this 30th day of March, 2021.                    _____

N. Reid Neureiter
United States Magistrate Judge